# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MAURICE HAWKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 16 C 4944 |
| | ) | |
| LAWRENCE (LARRY) GADE, JOHN DOE, | ) | Judge John Z. Lee |
| OFFICER SPRUHILL, THOMAS GOGGIN, | ) | |
| M.E. SARLITTO, B.M. RIVERA, JOHN. J. | ) | |
| JUREK, and NICOLAUS ORLANDO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maurice Hawks ("Hawks") brings this *pro se* action against a number of individually named Chicago police officers ("Defendants") in both their official and individual capacities. Hawks alleges that Defendants unlawfully arrested him, used excessive force, violated his First Amendment rights, and failed to intervene to prevent the deprivation of his constitutional rights, all in violation of 42 U.S.C. § 1983. He also brings state law claims for battery, false arrest imprisonment, and malicious prosecution. Defendants move to dismiss the complaint, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons given below, the Court grants in part and denies in part Defendants' motion.

## Factual Background[1]

Maurice Hawks, an African-American man, works as a collection agent for the United States Department of Education, as well as an ordained deacon and community activist. 2d Am. Compl. at 3, ECF no. 52. On August 21, 2014, at approximately 9:30 p.m., Hawks arrived at

---

[1] The following facts are taken from Plaintiff's complaint and are accepted as true on review of the motions to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

1000 Rush Street in Chicago, together with his brother Anthony Hawks ("Anthony") and another friend. *Id.* at 4. The three separated and Hawks began to talk with people there, as he had done many times before. *Id.*

About twenty minutes later, Hawks noticed a man standing by his car. The man asked whose car it was, and Hawks walked over, expecting that the man was curious because Hawks's car was a "classic car." Instead, the man asked Hawks to put his hands on the hood of the car. When Hawks laughed and asked why, the man brandished a badge, told Hawks to "put his fucking hands on the vehicle," and handcuffed and arrested him. *Id.*

The man turned out to be Defendant Officer Lawrence Gade. *Id.* Gade handcuffed Hawks extremely tightly, but when Hawks requested that he loosen the handcuffs, Gade tightened them further, lacerating Hawks' arms. *Id.* Gade then grabbed the handcuffs and lifted his arms upward, causing Hawks contusions and abrasions. *Id.* Then, in the presence of Defendant Officer Thomas Goggin, who was also plainclothed, *id.* at 5, Gade struck Hawks on the head with a blunt object, severing his ear and immediately causing Hawks severe pain. *Id.* at 4. Hawks briefly lost consciousness. *Id.*

Hawks recalls that Defendants Goggin and Gade pinned him down by his neck and face on the hood of the car, while uniformed officers stood nearby. *Id.* at 5. At that point, Anthony came from across the street to check on Hawks. *Id.* Hawks told Anthony to stay back, and Anthony—who was unaware that the plainclothes individuals were police officers—asked Defendant Goggin why Defendant Gade was hurting his brother. *Id.* Goggin asked if Anthony was with Hawks, to which Anthony responded that Hawks was his brother and asked that Gade stop hurting him. *Id.* Goggin then told Anthony that "he should have stayed where the fuck he

was at, you piece of shit," handcuffed Anthony, and placed him under arrest. *Id.* Bystanders began videotaping the incident. *Id.*

At that point, Defendant Gade handed Hawks over to Defendant Officers Rivera and John Doe, who drove Hawks to the 18th District Police Station. *Id.* On the way, Hawks asked why Rivera and Doe did not do anything when they had seen what had happened. *Id.* Neither officer responded. *Id.* When they arrived at the station, Hawks informed Rivera and Doe that if they did not take action, he would report them for police brutality as well. *Id.* at 5–6. Doe then asked Rivera what they should do. *Id.* at 6. In response, Rivera stated, "don't worry, he's just talking shit, he's not going to do anything." *Id.* While Hawks was being fingerprinted, the fingerprinting technician asked him why he was bleeding and whether he needed medical attention. *Id.* Hawks explained that the police were responsible and that he needed to go to the hospital. *Id.* He was informed that transport would be taking him to the hospital, but instead he was brought to a holding cell. *Id.*

While in the holding cell, Hawks could hear Anthony being beaten in a cell nearby. *Id.* The two brothers yelled back and forth, with Anthony shouting that they had broken his nose. *Id.* The officers nearby began laughing and joking with one another. *Id.* One officer, who Hawks thinks might be Officer Spruhill, shouted to Hawks that he would make sure that Hawks went away for a while and would never see his car again. *Id.*

Hawks could then hear the officers as they discussed what to put in the police report. *Id.* Hawks asked several times if he could be taken to the hospital because he was still bleeding profusely. *Id*. Several hours later, he was escorted out of his cell to be transported to the hospital. *Id.* On the way, he saw Anthony, his lips swollen and "busted open," and his clothing drenched in blood. *Id.* at 7.

Hawks was transported to St. Joseph's Hospital. *Id.* At the hospital, Hawks refused treatment because his father had passed away a year earlier due to negligent care at that very hospital. *Id.* The attending physician asked if he could at least treat the injury to stop the bleeding and prevent the wound from becoming infected, but Hawks continued to deny treatment. *Id.* He then became incoherent. *Id.* Hawks was transported back to the jail, and several hours later, brought to Illinois Masonic Hospital for treatment. *Id.* at 8.

Hawks's first complaint was filed on August 2, 2016, against the City of Chicago Police, Larry Gade, and "John Does." *See* Compl., ECF No. 7. Hawks filed an amended complaint on January 25, 2017, which included Anthony Hawks as an additional plaintiff, *see* Am. Compl. at 1, ECF No. 37; the Court struck that complaint on March 7, 2017, *see* ECF No. 46. Hawks filed a second amended complaint on March 27, 2017, naming, in addition to Larry Gade and John Does, the following additional defendants: Thomas Goggin, Sarlitto M E, B M Rivera, Officer Spruhill, John J. Jurek, and Nicolaus Orlando ("New Defendants"). 2d Am. Compl. at 1.

**<u>Legal Standard</u>**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012)

4

(citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

Hawks brings claims under § 1983, alleging that Defendants used excessive force (Count I), unlawfully arrested him (Count II), violated his First Amendment rights (Count III), and failed to intervene to prevent the violation of his constitutional rights (Count IV). He also brings state laws claims of battery (Count V), "false arrest imprisonment" (Count VI), malicious prosecution (Count VII), and indemnification (Count VIII).

Defendants move to dismiss the second amended complaint in full as to the New Defendants, contending that the claims are barred by the statute of limitations because the second amended complaint does not relate back to the original complaint. Defendants also seek to dismiss the state law battery, malicious prosecution, and "false arrest imprisonment" claims as barred by the statute of limitations; the § 1983 false arrest claim, and state law malicious prosecution and "false arrest imprisonment" claims as barred by *Heck v. Humphrey* and because there was probable cause for the arrest; the malicious prosecution claim because Hawks' criminal proceeding was not terminated in his favor in a manner indicative of innocence; the First Amendment claim for failure to state a claim; and the indemnification claim as against a non-party. Defendants do not seek to dismiss the excessive force and failure-to-intervene claims as they relate to Defendant Gade.

### I. Statute of Limitations

Defendants move to dismiss all claims as to the New Defendants, contending that the New Defendants were added after the expiration of both the one-year statute of limitations on Hawks's state law claims, and two-year statute of limitations on Hawks's federal claims. They also seek to dismiss the state law battery and "false arrest imprisonment" claims as to all

5

Defendants and the malicious prosecution claim as to the New Defendants as barred by the statute of limitations. Defs.' Mot. Dismiss at 8–10, ECF No. 68.

The statute of limitations is an affirmative defense, and dismissing complaints on the grounds of the statute of limitations is typically improper. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004). This is because a plaintiff "need not anticipate and attempt to plead around all potential defenses . . . . Complaints need not contain *any* information about defenses and may not be dismissed for that omission." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) (emphasis in original). However, a district court may dismiss a claim under Rule 12(b)(6) as untimely if it is clear, from the face of the complaint, that the claim is indisputably untimely. *United States v. Lewis,* 411 F.3d 838 (7th Cir. 2005). "In other words, the plaintiff must affirmatively plead himself out of court." *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 614 (7th Cir. 2014) (reviewing statute of limitations dismissal under 17 U.S.C. § 507(b)).

The limitations period for claims under 42 U.S.C. § 1983 is taken from state law. *Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993). In Illinois, the period is two years. *Id*. As Defendants contend, the statute of limitations for Hawks's § 1983 claims therefore expired on August 20, 2016, two years after alleged events took place. *See* Defs.' Mot. Dismiss at 5. And, as Defendants correctly assert, Hawks's state-law claims are subject to a one-year statute of limitation, pursuant to the Illinois Local Government and Governmental Employees Tort Immunity Act (TIA), 745 Ill. Comp. Stat. 10/8–101(a). *See* Defs.' Mot. Dismiss at 9. The TIA provides that "[n]o civil action . . . may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 Ill. Comp. Stat. 10/8–101(a).

A.  **New Defendants**

Where the statute of limitations has run on a plaintiff's claim at the time the plaintiff amends a complaint to add new defendants, the claims against those defendants are timely only if the amendment relates back to the original complaint as provided in Federal Rule of Civil Procedure Rule 15(c)(1)(C).  For such an amendment to relate back, the Court must determine (1) whether the newly added parties knew or should have known, during the 90-day period after filing the original complaint, that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant, and (2) whether the plaintiff's delay in discovering the mistake prejudiced the newly added defendant.  *See* Fed. R. Civ. P. 15(c)(1)(C); Fed. R. Civ. P. 4(m); *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559–60 (7th Cir. 2011) (citing *Krupski v. Costa Crociere, S.p.A.*, 560 U.S. 538 (2010)).

According to the Defendants, Hawks's lack of knowledge of the identities of the New Defendants does not qualify as a "mistake" under Rule 15, and therefore there can be no relation back to add the New Defendants.  Defs.' Mot. Dismiss at 6.  But multiple courts in this district have determined that a plaintiff's "mistake," under both *Krupski* and *Joseph*, includes a plaintiff's inadequate knowledge of defendants' identity.  *See White v. City of Chi.*, No. 14 CV 3720, 2016 WL 4270152, at *15–19 (N.D. Ill. Aug. 15, 2016) ("[T]he Supreme Court . . . noted that dictionary definitions of the word 'mistake' include not only '[a]n error, misconception, or misunderstanding,' but '*inadequate knowledge*, or inattention' as well. . . . By referencing 'inadequate knowledge' the Supreme Court implied that its reasoning applied to a John Doe pleading.") (internal citations omitted) (emphasis in original) (citing *Krupski,* 560 U.S. 538, and *Joseph*, 638 F.3d at 559)); *see also Haroon v. Talbott*, No. 16-cv-4720, 2017 WL 4280980, *3–9 (N.D. Ill. Sept. 27, 2017) (extensively analyzing *Krupski* and subsequent cases in this Circuit in coming to the same conclusion as *White*); *Ryan v. City of Chi.*, No. 16 C 9762, 2016 WL

6582570, at *1–2 (N.D. Ill. Nov. 7, 2016) (holding that developments in *White* and other district court cases stemming from *Krupski* and *Joseph* required denying motion to dismiss unknown officers).

What is more, *Krupski* and *Joseph* make clear that, under Rule 15, the inquiry is not about the plaintiff's knowledge, but what the newly named defendants knew or should have known. *See Krupski*, 560 U.S. at 553–54 ("[T]he question under Rule 15(c)(1)(C)(ii) is what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant."); *Joseph*, 638 F.3d at 559–60 (limiting analysis under Rule 15(c)(1)(C)(ii) to "whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant"); *accord White*, 2016 WL 4270152, at *16; *Haroon*, 2017 WL 4280980, at *4. Therefore, to determine whether a claim is unquestionably untimely, the Court must have before it some record of what the newly added defendants knew about a plaintiff's lawsuit before they were added. Such evidence is rarely before the Court on a motion to dismiss. *See Clair v. Cook Cty., Ill.*, No. 16 CV 1334, 2017 WL 1355879, at *4 (N.D. Ill. Apr. 23, 2017) (denying motion to dismiss on this basis); *Klinger v. City of Chi.*, No. 15 CV 1609, 2017 WL 736895, at *5 (N.D. Ill. Feb. 24, 2017) (same); *Ryan*, 2016 WL 6582570, at *1–2 (same); *Karney v. City of Naperville*, No. 15 C 4608, 2016 WL 6082354, at *9 (N.D. Ill. Oct. 18, 2016) (same).

But Defendants claim that the record in fact demonstrates that "there is no way that the [New] Defendants could have learned of the lawsuit before the passage of the statute of limitations," pointing to docket entries indicating that service upon the original two defendants did not occur until August 25, 2016, after the expiration of the statute of limitations. Defs.' Mot.

8

Dismiss at 8 (citing ECF Nos. 16, 17). However, the relevant time period in Rule 15(c)(1)(C) is not the statute of limitations, but rather the 90-day period after the filing of the original complaint, as specified in Rule 4(m). *See* Fed. R. Civ. P. 4(m), 15(c)(1)(C). The Court therefore concludes that what the New Defendants knew or should have known cannot be answered on the basis of the pleadings, and must await a more fully developed record. For now, Hawks's claims are not unquestionably untimely as to the New Defendants, and the motion to dismiss all counts against the New Defendants on that basis is accordingly denied.

B.  **Battery, False Arrest Imprisonment, and Malicious Prosecution Claims**

Hawks pleads that the battery and unlawful arrest both took place on August 21, 2014. 2d Am. Compl. at 3. The battery claim accrued that day, *see Haynes v. City of Chi.*, No. 07-CV-2231, 2008 WL 1924891, at *2 (N.D. Ill. Apr. 29, 2008) ("Under Illinois law, a battery claim accrues on the date that the battery occurred."), meaning that the claim expired in August 2015, before Hawks filed his complaint. The battery claim is therefore clearly untimely.

As for the "false arrest imprisonment claim," the Court construes Hawks as asserting separate claims for false arrest and false imprisonment, consistent with the leniency afforded to *pro se* litigants. *See Talley v. Lane*, 13 F.3d 1031, 1033 (7th Cir. 1994). Under Illinois law, a claim for false arrest accrues on the date of the arrest, while claims for false imprisonment accrue at the time of release from the wrongful imprisonment. *Cooper v. Butler*, No. 92 C 5604, 1995 WL 399009, at *5 (N.D. Ill. June 29, 1995) (citing *Phelps v. Klipfel*, No. 91 C 4742, 1991 WL 285279, at *3 (N.D. Ill. Dec. 26, 1991); *Hernandez v. Sheahan*, No. 93 C 1668, 1993 WL 257486, at *6 (N.D. Ill. July 8, 1993)). On the basis of the complaint, the Court concludes that Hawks's false arrest claim accrued in August 2014 and expired in August 2015, meaning that the claim is barred. As for the false imprisonment claim, however, because it is not clear from the face of the complaint when Hawks was released from imprisonment, the claim may proceed.

Likewise, the Court cannot determine at this time if the claim for malicious prosecution is time-barred as to the New Defendants. A cause of action for malicious prosecution does not accrue until the criminal proceeding on which it is based has been terminated in the plaintiff's favor. *Friends-Smiley v. City of Chi.*, No. 16-CV-5646, 2016 WL 6092637, at *2 (N.D. Ill. Oct. 19, 2016) (citing *Ferguson v City of Chi.*, 820 N.E.2d 455, 650 (Ill. 2004)). And while Hawks alleges that the relevant criminal proceedings "were ultimately dismissed in a manner indicative of innocence," 2d Am. Compl. ¶ 42, which for the purpose of this analysis we assume is true, he does not indicate the date of that event. Accordingly, the malicious prosecution claim may proceed against the New Defendants at this time.

In summary, the Court grants Defendants' motion to dismiss Hawks's state law claims for battery and false arrest as barred by the statute of limitations, and denies it as to Hawks's state law claims for false imprisonment and malicious prosecution.

### III. *Heck v. Humphrey* Bar and Probable Cause

Defendants move to dismiss the § 1983 false arrest claim, malicious prosecution claim, and state law false arrest and false imprisonment claims for two reasons. First, they assert that the claims are barred by *Heck v. Humphrey,* which requires a district court to dismiss a plaintiff's § 1983 suit if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate his conviction or sentence has already been invalidated." 512 U.S. 477, 487 (1994). Defs.' Mot. Dismiss at 10–12. Second, they contend that the claims must also be dismissed because there was probable cause for the underlying arrest. *Id.* at 12–13. Finally, Defendants seek to dismiss the malicious prosecution claim on the additional basis that Hawks's criminal proceeding was not terminated in his favor in a manner indicative of innocence. *Id.* at 13–14.

In support of their arguments to dismiss these claims, Defendants rely on a certified statement of conviction in the case of *Ill. v. Maurice Hawks*, No. 14CR1650401. *See id*. at 10–14 (citing *id.* Ex. 3, Statement of Conviction, ECF No. 68-3). The statement of conviction is attached as an exhibit to Defendants' motion to dismiss and is not mentioned anywhere in Plaintiff's second amended complaint. On a motion to dismiss, the Court generally must confine its inquiry to the factual allegations in the operative complaint. *Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661 (7th Cir.2002). If the moving party includes "matters outside the pleadings," Federal Rule of Civil Procedure 12(d) dictates that the Court either exclude that material, or convert the motion into one for summary judgment and give all parties an opportunity to present all pertinent material. Fed. R. Civ. P. 12(d); *Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 713 (7th Cir. 2013). While the Court can take judicial notice of information contained in certified statements of conviction, *see, e.g., Hill v. City of Chi.*, No. 13 C 4847, 2014 WL 1978407, at *2 (N.D. Ill. May 14, 2014), and judicial notice does not require a court to convert a motion to dismiss into a motion for summary judgment, *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012), it is unclear whether this statement of conviction is even tied to the present case. The statement of conviction does not indicate the date of the arrest, and the earliest date associated with the charges in the statement is listed as September 26, 2014, over a month after the events described in Hawks's second amended complaint. *See* Statement of Conviction at 001. The Court therefore declines to take judicial notice of any material in this document, and excludes it from consideration. Because Defendants' arguments to dismiss these claims are entirely reliant upon the material in the statement of conviction, the Court therefore denies the motion to dismiss the § 1983 false arrest claim, malicious prosecution claim, state law false arrest and state law false imprisonment claims on this basis.

## IV. First Amendment Claim

In Count III, Hawks asserts a claim for violation of his First Amendment rights. Defendants contend that Hawks has failed to state a claim for a First Amendment violation. To prevail on a First Amendment retaliation claim, a plaintiff must plead facts that plausibly suggest that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)).

According to Defendants, Hawks fails to allege that he engaged in any protected activity or that such activity was a motivating factor in his alleged unlawful arrest. Defs.' Mot. Dismiss at 14. The Court agrees. Hawks's factual allegations describe a violent arrest, but they do not suggest that the actions by Defendants were in response to any First Amendment protected speech or activity. *See* 2d Am. Compl. at 3–5. The Court therefore grants Defendants' motion to dismiss the First Amendment claim and dismisses Count III without prejudice.

## V. Indemnification Claim

In Count VIII, Hawks asserts an indemnification claim under the Illinois Tort Immunity Act (TIA), 745 ILCS 10/9-102, which directs municipalities to pay compensatory damage judgments for torts committed by their employees while acting within the scope of their employment. 2d Am. Compl. ¶¶ 46. 47. Hawks appears to assert the claim against "the Chicago Police Department in the City of Chicago," *id.* ¶ 47, which is not a party named in the second amended complaint. *See* 2d Am. Compl. at 1. Defendants move to dismiss the indemnification on this basis. But while the City of Chicago is not technically party to the complaint, Hawks has sued Chicago police officers, in both their personal and official capacities, *see* ¶¶ 3–8, and "[a]s

long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Hill v. Shelander*, 924 F.2d 1370, 1380 (7th Cir. 1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As the City of Chicago's law office represents the Defendant officers, *see, e.g.,* ECF Nos. 8, 12, the City is clearly on notice of the suit, and the Court treats the suit as a suit against the City. Accordingly, Defendants' motion to dismiss Count VIII as against a non-party is denied.

## Conclusion

For the reasons stated herein, Defendants' motion to dismiss [68] is granted in part and denied in part. The Court grants Defendants' motion to dismiss Hawks's claim for First Amendment retaliation (Count III) and battery (Count V). The Court grants the motion to dismiss Count VI as to the false arrest claim but denies it as to the false imprisonment claim. In all other respects Defendants' motion is denied.

The status hearing previously set for May 15, 2018 at 9:00 a.m. shall stand.

**IT IS SO ORDERED.**              **ENTERED    5/14/18**

_____
**John Z. Lee**
**United States District Judge**